IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

BRIAN J. NICHOLSON,              )    CIVIL NO. 17-00508 HG-KJM
                                 )
              Plaintiff,         )
                                 )
          vs.                    )
                                 )
NANCY A. BERRYHILL, Acting       )
Commissioner of Social           )
Security,                        )
                                 )
              Defendant.         )
_____)

**ORDER REVERSING THE DECISION OF THE SOCIAL SECURITY ADMINISTRATION COMMISSIONER AND REMANDING THE CASE FOR FURTHER PROCEEDINGS**

This case involves the appeal of the Social Security Administration Commissioner's denial of Disability Insurance Benefits and Supplemental Security Income benefits to Plaintiff Brian J. Nicholson.

On April 6, 2015, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income pursuant to Titles II and XVI of the Social Security Act. Plaintiff claims that he has been disabled since March 25, 2015 on the basis of a hip fracture, osteoporosis, lumbar spine degenerative disease, a right femur fracture, and seizures.

The Social Security Administration denied Plaintiff's applications for Disability Insurance Benefits and Supplemental

1

Security Income.  Following an administrative hearing, the
Administrative Law Judge ("ALJ") held that Plaintiff was not
disabled for a period which lasted or was expected to last for a
continuous period of one year at any time from March 25, 2015
through the date of the ALJ's decision of April 18, 2017.  The
Appeals Council denied Plaintiff's request for review and
Plaintiff appealed to this Court.

The Court **REVERSES** the decision of the Social Security
Administration Commissioner and **REMANDS** the case for further
evaluation.

Remand is necessary to allow the Administrative Law Judge to
address the opinions of Plaintiff's treating and examining
physicians.

## PROCEDURAL HISTORY

On April 6, 2015, Plaintiff Brian J. Nicholson filed an
application for Disability Insurance Benefits with the Social
Security Administration.  (Administrative Record ("AR") at pp.
18, 192-195, ECF No. 15).  On the same date, Plaintiff Nicholson
filed an application for Supplemental Security Income.  (AR at
pp. 18, 196-201).

On June 11, 2015, the Social Security Administration denied
Plaintiff's initial applications for Disability Insurance
Benefits and Supplemental Security Income.  (AR at pp. 81-100,

127).

On September 8, 2015, the Social Security Administration
denied Plaintiff's motion for reconsideration.  (AR at pp. 101-
26, 133).  Following the denials, Plaintiff sought a hearing
before an Administrative Law Judge ("ALJ").

On March 2, 2017, an ALJ conducted a hearing on Plaintiff's
applications.  (AR at pp. 39-80).

On April 18, 2017, the ALJ issued a written decision denying
Plaintiff's applications.  (AR at pp. 18-27).  Plaintiff filed an
appeal with the Appeals Council and submitted additional evidence
on appeal.  (Supplemental to the AR at pp. 648-57, ECF No. 20).

On August 18, 2017, the Appeals Council denied further
review of Plaintiff's applications and rendered the ALJ's
decision as the final administrative decision by the Commissioner
of Social Security.  (AR at pp. 1-4, ECF No. 15).

On October 11, 2017, Plaintiff sought judicial review of the
Commissioner of Social Security's final decision to deny his
applications for Disability Benefits and Supplemental Security
Income in this Court pursuant to 42 U.S.C. § 405(g).  (Complaint
for Review of Social Security Disability and Supplemental
Security Income Benefits Determinations, ECF No. 1).

On January 16, 2018, the Government filed the Administrative
Record.  (ECF No. 15).

On January 22, 2018, the Magistrate Judge issued a briefing

schedule.  (ECF No. 16).

On March 16, 2018, Plaintiff filed PLAINTIFF'S OPENING
BRIEF.  (ECF No. 17).

On April 26, 2018, the Parties filed a STIPULATION FOR
EXTENSION OF TIME TO FILE THE SUPPLEMENTAL CERTIFIED
ADMINISTRATIVE RECORD AND REVISED BRIEFING.  (ECF No. 18).

On April 27, 2018, the Court issued a revised briefing
schedule and a deadline for the Government to file the
Supplemental Certified Administrative Record.  (ECF No. 19).

On May 4, 2018, the Government filed the Supplemental
Certified Administrative Record.  (ECF No. 20).

On June 18, 2018, Plaintiff filed PLAINTIFF'S AMENDED
OPENING BRIEF.  (ECF No. 21).

On July 18, 2018, Defendant filed DEFENDANT'S ANSWERING
BRIEF.  (ECF No. 22).

On August 9, 2018, Plaintiff filed PLAINTIFF'S REPLY BRIEF.
(ECF No. 23).

On August 16, 2018, the Government requested a continuance
of the hearing.  (ECF No. 24).

On the same date, the Court granted the Government's request
to continue the hearing.  (ECF No. 25).

On October 29, 2018, the Court held a hearing on Plaintiff's
appeal of the decision of the Social Security Administration
Commissioner.

**BACKGROUND**

Plaintiff is a 46 year old male. (Administrative Record ("AR") at p. 41, ECF No. 15). Plaintiff suffers from osteoporosis, a seizure disorder, lumbar degenerative disc disease, and hip pain due to a previously broken right femur that rendered his right leg shorter than his left. (Id. at p. 41).

From 2002 until March 2015, Plaintiff worked full-time in the restaurant industry as a server, manager, and bartender. (Id. at pp. 43-49, 221). Plaintiff attended the Culinary Institute of America for one year and received Master in Wine I and II certificates. (Id. at p. 42).

On March 24, 2015, Plaintiff had a grand mal seizure, causing him to fall and break his right femur. (Id. at pp. 309-19). Plaintiff was hospitalized and underwent surgery that required a titanium rod to be placed in his right leg, shortening his leg by at least one inch. (Id. at pp. 50, 309-19). Plaintiff states that as a result, he suffers from consistent pain in his hips and back and he requires a cane to ambulate. (Id. at pp. 50-53).

On April 6, 2015, Plaintiff filed applications for Disability Insurance benefits and for Supplemental Security Income, alleging that he has been disabled following the March 24, 2015 grand mal seizure. (Id. at pp. 192-201).

Plaintiff's initial applications were denied. Plaintiff

sought reconsideration which was also denied by the Social Security Administration.  Following the denial of Plaintiff's request for reconsideration, a hearing was held before an Administrative Law Judge on March 2, 2017.

On April 18, 2017, the Administrative Law Judge denied Plaintiff's applications for Disability Insurance and Supplemental Security Income benefits.  (Id. at pp. 18-27).  The Administrative Law Judge found that although Plaintiff could not perform his previous work as a server, there was work that existed in significant numbers in the economy that Plaintiff could perform.  (Id. at pp. 24-27).  The Administrative Law Judge relied on the testimony of a vocational expert to find that someone with Plaintiff's limitations could perform work as a Cashier II, Storage Facility Rental Clerk, and Furniture Rental Consultant.  (Id. at p. 26).

Plaintiff sought review of the Administrative Law Judge's decision with the Appeals Council and submitted additional medical evidence.  (Supplemental Administrative Record at pp. 648-57, ECF No. 20).  The Appeals Council denied Plaintiff's request for review and rendered a final administrative decision by the Commissioner of Social Security.  (AR at pp. 1-4, ECF No. 15).

## STANDARD OF REVIEW

A claimant is disabled under the Social Security Act if he

or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 42 U.S.C. § 1382c(a)(3)(A); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

A decision by the Commissioner of Social Security must be affirmed by the District Court if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole. See 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993).

## ANALYSIS

### I.  Plaintiff's Work History Prior to His Alleged On-Set Date of Disability on March 25, 2015

From January 2002 until March 2007, Plaintiff worked as the assistant food and beverage director at Renaissance Hotels on the mainland. (AR at pp. 48, 221, ECF No. 15). Plaintiff's duties included staff development, inventory, and ordering the beverages

and food for the hotel chain.  (Id. at p. 48).  Following that position, Plaintiff worked at a boutique resort in San Francisco for one year where he was employed as the beverage manager.  (Id. at pp. 46-48, 221).  Plaintiff was responsible for developing the wine list, ordering inventory, staff training, and creating cocktails for the resort.  (Id. at pp. 46-47).

From March 2008 until November 2014, Plaintiff worked full-time as a server in fine dining restaurants in California.  (Id. at pp. 44-46, 221).  From November 2014 until March 2015, Plaintiff worked as a server in fine dining restaurants on Maui. (Id.)  Plaintiff's work as a server required him to wait on tables, take orders, deliver food to tables, prepare the restaurant for diners and clean the restaurant following service. (Id. at pp. 44-46).  Plaintiff stated that he lifted trays of food weighing about 20 pounds nearly 30 or 40 times a day.  (Id. at p. 45).

## II. Plaintiff's Various Injuries And Medical Treatment Beginning on March 24, 2015

### A. First Injury - Grand Mal Seizure And Fall on March 24, 2015 Requiring Surgery And Metallic Rod In His Femur

On March 24, 2015, Plaintiff suffered a grand mal seizure. (AR at pp. 49, 309-19, ECF No. 20).  Plaintiff had previously suffered one seizure when he was 19 years old, but he had not had a seizure in 25 years.  (Id. at p. 50).  Plaintiff was on the

island of Lanai on March 24, 2015, and early in the morning was
in the bathroom when "everything went black." (Id. at pp. 49-
50). Plaintiff was taken to the emergency room by ambulance and
transported to the island of Maui where he was hospitalized for
six days at Maui Memorial Medical Center. (Id. at pp. 309-19).
Plaintiff broke his femur bone in his right leg as a result of
falling on concrete when he had his seizure. (Id. at p. 309).
The emergency room records stated that Plaintiff had alcohol
dependence and alcohol withdrawal syndrome. (Id.)

Two days after the grand mal seizure, on March 26, 2015,
Plaintiff underwent surgery to insert a metal rod in his right
femur, performed by orthopaedic surgeon Dr. Douglas Ching, M.D.
(Id. at p. 310). Plaintiff developed a large bruise over the
surgical site. He participated in physical therapy and
occupational therapy. He was ambulating with a cane. (Id. at p.
310). Plaintiff was instructed not to put any weight on his
right leg. (Id.) As a result of the surgery, Plaintiff suffered
from "shortening and abduction of right lower extremity." (Id.
at p. 313). Plaintiff was discharged on March 30, 2015. (Id. at
pp. 309-10).

### B. Plaintiff's Evaluations Following His March 26, 2015 Surgery

#### 1. Evaluations By Orthopaedic Surgeon Dr. Douglas Ching, M.D. and Initial Physical Therapy

On April 10, 2015 and May 8, 2015, Plaintiff returned to the orthopaedic surgeon, Dr. Douglas Ching, M.D., following his femur surgery. (Id. at pp. 320-22). Dr. Ching found the metallic rod and screws placed in Plaintiff's femur were healing properly and there were no new fractures. (Id. at p. 322).

Dr. Ching issued a prescription for Plaintiff to attend physical therapy for 2-3 days a week for six weeks beginning on May 18, 2015. (Id. at pp. 325-26). Plaintiff attended physical therapy sessions on May 18, 20, and 27, 2015, June 1, 5, 8, 12, 15, 19, and 26, 2015, and July 3, 2015. (Id. at pp. 334-46).

The right femur fracture did not heal well due to Plaintiff suffering from osteoporosis. (Id. at pp. 57-58).

## 2. Evaluations By Plaintiff's Primary Physician, Dr. Anne Biedel And Continued Physical Therapy

The record reflects that Dr. Anne Biedel, M.D., Plaintiff's primary care physician, examined Plaintiff more than 25 times over the period of June 2015 to September 2016.

On June 9, 2015, Plaintiff was examined by Dr. Biedel. (Id. at p. 370). Dr. Biedel reported that following Plaintiff's March 2015 seizure, Plaintiff continued to see his orthopaedic surgeon, Dr. Ching, who was treating Plaintiff's fractured right femur. Dr. Biedel stated that Plaintiff did not like how the anti-seizure medications made him feel. (Id.)

On June 23, 2015, Plaintiff was again examined by Dr.

Biedel.  (Id. at p. 368).  Plaintiff complained of pain and stated that he was having trouble sleeping but had continued to go to physical therapy for his right femur fracture which had not completely healed.  (Id.)

Dr. Biedel issued a prescription for Plaintiff to attend further physical therapy.  (Id. at p. 371).  The prescription was for Plaintiff to attend physical therapy for 2 days a week for four weeks.  (Id.)  Plaintiff attended physical therapy on July 3, 2015.  (Id. at p. 335).

### C.  Plaintiff's Second Injury – Fall Causing Knee Pain And Toe Fractures On July 5, 2015

On July 5, 2015, Plaintiff was at the beach when "he got slammed while trying to come out of the water, he hit his knee into the bottom of the sand and had a hard time getting out." (Id. at p. 367).  The following day, on July 6, 2015, Plaintiff was examined by Dr. Biedel a third time.  He had pain in his leg and knee from the fall at the beach as it was where "he had a previous fracture and metal placed."  (Id.)

Plaintiff was examined again by Dr. Biedel three days later on July 9, 2015.  (Id. at p. 366).  Plaintiff required the use of crutches and reported pain in his right knee and in his toes and feet.  (Id.)  Plaintiff expressed problems sleeping and ambulating.  X-rays of Plaintiff's toes were taken and revealed fractures.  Plaintiff was required to tape his toes to allow the

fractures to heal.  (Id.)

Dr. Biedel continued to regularly examine Plaintiff and saw him for appointments on August 10, September 22, October 20, November 10, December 3, December 8, and December 28, 2015.  (Id. at pp. 482-88).  Dr. Biedel continued to examine Plaintiff in 2016 and saw him for appointments on January 7, January 26, January 27, February 2, February 11, February 18, February 23, February 25, March 9, April 11, May 7, May 23, June 30, August 10, August 30, and September 27, 2016.  (Id. at pp. 445-481).

Dr. Biedel referred Plaintiff to specialists in order to assess the severity of his infirmities.  Plaintiff was referred to Neurosurgeon Dr. Thomas Rogers, M.D., Endocrinologist Dr. Frank Singer, M.D., and Neurologist Dr. George E. Powell, M.D. Each of the physicians examined and treated Plaintiff.

**D.    Plaintiff's Third Injury - Fall In The Bathtub Causing Lacerations And Spine Fractures on January 24, 2016**

On January 24, 2016, Plaintiff fell in his bathtub and was injured for a third time.  (Id. at p. 480).  During the fall, Plaintiff hit his head on the shower then fell back and hit his head on the rim of the tub.  (Id.)  Plaintiff suffered lacerations on his head and scalp.  (Id.)  On January 26, 2016, Plaintiff was examined by Dr. Biedel.  (Id.)

On January 28, 2016, Plaintiff was referred for a bone density and vertebral assessment due to his reports of pain in

his back after the fall.  Plaintiff was diagnosed with osteoporosis.  (<u>Id.</u> at p. 491).

On February 2, 2016, Plaintiff continued to have pain in his head and back as a result of the fall on January 24, 2016. Imaging of Plaintiff's skull was conducted.  (<u>Id.</u> at p. 478). Plaintiff was prescribed medication for his pain and sciatica. (<u>Id.</u>)

On February 24, 2016, Plaintiff was referred by Dr. Biedel for a spine x-ray.  (<u>Id.</u> at p. 387).  The x-ray revealed a severe compression fracture in one of Plaintiff's vertebrae and a mild compression fracture in another.  (<u>Id.</u>)  The x-ray stated the cause of the fractures was "underlying osteoporosis."  (<u>Id.</u>)

On March 8, 2016, Plaintiff was referred by Dr. Biedel for magnetic resonance imagining (MRI) of Plaintiff's spine.  (<u>Id.</u> at p. 388).  Plaintiff's fall on January 24, 2016 caused a burst fracture and a compression fracture in his spine.  (<u>Id.</u> at pp. 384-85).  There were also osteoporotic fractures in his spine. Neurosurgeon Dr. Thomas Rogers, M.D. conducted the MRI.  (<u>Id.</u>) He prescribed a back brace for Plaintiff and told Plaintiff that he could not work given the severity of his osteoporosis condition.  (<u>Id.</u> at pp. 385-86).

Plaintiff continued to attend his appointments with Dr. Biedel and complained that despite attending physical therapy he was suffering from pain in his hips, knee, and his back. (<u>Id.</u> at

pp. 445-89).

Dr. Biedel issued further prescriptions for physical therapy on September 8, 2015, December 17, 2015, February 24, 2016, and April 6, 2016. (Id. at pp. 393-97). Plaintiff attended physical therapy on August 6, 14, 19, 26, 28, and September 2, and 4, 2015 (Id. at pp. 329-33, 374-75, 516-519). Plaintiff attended therapy on October 12, 19, 21, 26, 29, November 12, 16, 21, 30, December 14, 15, 18, 21, 22, and January 6, 12, and 21, 2016. (504-15, 541-554).

### E.   Plaintiff's Fourth Injury - Second Grand Mal Seizure on May 17, 2016

On May 17, 2016, Plaintiff had a second grand mal seizure. (Id. at p. 641). Plaintiff went to the emergency room the following day and had another seizure while waiting in the emergency room. (Id. at p. 647). He was discharged to follow-up with Dr. Biedel. Dr. Biedel examined Plaintiff on May 23, 2016 and referred Plaintiff to Neurologist Dr. George Powell. (Id. at pp. 453-56).

### F.   Plaintiff's Continued Treatment By Dr. Biedel

Plaintiff continued to have appointments with Dr. Biedel and complained of pain in his back, hips, and leg despite medications. (Id. at pp. 447-450). On August 30, 2016, Dr. Biedel found that Plaintiff was working on his strength through

14

physical therapy but he "cannot stand very long in one place, has to sit down often and take a rest, his low back and hips are very painful still."  (Id. at p. 447).

On November 14, 2016, Dr. Biedel wrote a letter for Plaintiff's Social Security proceedings, explaining that he was disabled as a result of an epileptic seizure disorder.  (Id. at p. 624).  Dr. Biedel also concluded that Plaintiff suffered from gastrointestinal and abdominal problems, neurological issues, psychological problems, and osteoporosis.  (Id. at p. 625).

On May 26, 2017, following Plaintiff's hearing before the ALJ, Dr. Biedel wrote a letter to the Social Security Administration Appeals Council setting forth her treatment history of the Plaintiff.  She explained that after two years of treatment following his fractured femur in March 2015, Plaintiff continued to suffer from multiple physical problems including a seizure disorder, severe osteoporosis with current pathological fractures, and compression fractures in his back.  (Supplemental AR at p. 652).  Dr. Biedel described Plaintiff's condition as follows:

> Mr. Nicholson continued to suffer pathological
> fractures in his spine from severe osteoporosis.  He
> has continued to have diffuclties walking, standing
> and sitting for very long due to pain in his right hip
> and knee which he injured after another fall.  Because
> of his lumbar fractures and degeneration of discs he
> also has a radiculopathy that causes his left leg to
> feel numb and painful.  He must use a cane to stabilize
> his gait.

I have prescribed medications to help with nerve pain,
muscle and bone pain and osteoporosis.  He is unable to
tolerate the oral medications for osteoporosis due to
severe gastritis.... Mr. Nicholson is in constant pain.
He is unsteady on his feet and cannot tolerate staying
in certain positions for very long.  He is in constant
danger of falling and breaking bones.

(Id.)

## G.    Evaluations By State of Hawaii Department of Human
## Services Physician, Dr. Kenneth Kau, M.D.

Plaintiff was examined three times by Dr. Kenneth Kau, M.D.,

of the State of Hawaii Department of Human Services to evaluate

Plaintiff's employability and eligibility for State benefits.

(Id. at pp. 555-64).

### 1.    Dr. Kau's First Examination

On July 20, 2016, Dr. Kau examined Plaintiff to evaluate

Plaintiff's employability.  (AR at pp. 562-64, ECF No. 15).  Dr.

Kau reviewed Plaintiff's prior medical records and conducted his

own examination.  (Id. at pp. 562-63).  Dr. Kau concluded that

Plaintiff suffered from seizures and osteoporosis.  (Id. at p.

563).  Dr. Kau found that Plaintiff was unable to work since the

discovery of spinal fractures four months earlier in March 2016.

(Id. at p. 561).  Dr. Kau found that Plaintiff had been pursuing

treatment for his ailments since at least March 2016.  (Id. at p.

563).

Dr. Kau conducted a functional assessment of Plaintiff and

concluded that Plaintiff had been unable to work since at least March 2016.  Dr. Kau specifically found that Plaintiff could not lift or carry any weight.  (Id. at p. 564).  Dr. Kau found that Plaintiff was not able to participate in any activities except treatment and rehabilitation due to his back fractures, osteoporosis, and hip pain.  (Id.)  Plaintiff was ordered to return for examination before November 2016 for reevaluation to determine if there was improvement in his condition.  (Id.)

### 2. Dr. Kau's Second Examination

On October 26, 2016, Dr. Kau conducted a physical examination of Plaintiff a second time.  (Id. at pp. 555-59).  Dr. Kau's stated that Plaintiff had another seizure four days prior on October 22, 2016, and he found that the seizure caused Plaintiff to fall and suffer another back compression.  (Id. at p. 556).

Dr. Kau's findings concurred with the opinions of Plaintiff's neurologist and primary physician, determining that Plaintiff remained unable to work.  (Id. at p. 555).  Dr. Kau found that Plaintiff suffered from a seizure disorder with osteoporosis and lumbar fractures that made him "medically unstable."  (Id. at p. 556).  Plaintiff was ordered to return for examination before February 2017 for reevaluation to determine if there was improvement in his condition.  (Id. at p. 555).

17

### 3. Dr. Kau's Third Examination

On January 25, 2017, Dr. Kau conducted a physical examination of Plaintiff for a third time. (<u>Id.</u> at pp. 635-37). Dr. Kau concluded that Plaintiff continued to be incapacitated and unable to work. (<u>Id.</u> at p. 637). Dr. Kau found that Plaintiff would remain incapacitated for at least the next five months, until May 25, 2017. (<u>Id.</u>) Dr. Kau's examination revealed that Plaintiff continued to have pain and weakness in his lower extremities, hips, and back. (<u>Id.</u> at p. 635).

### 4. Dr. Kau's Conclusions

The three examinations of Dr. Kau determined that Plaintiff was unable to work from at least March 2016, when his vertebral compressions were discovered, until at least May 25, 2017. (<u>Id.</u> at pp. 561, 637).

## III. Applicable Law

The Social Security Administration has implemented regulations establishing when a person is disabled so as to be entitled to benefits under the Social Security Act, 42 U.S.C. §§ 423, 1382c. The regulations establish a five-step sequential evaluation process to determine if a claimant is disabled. The Commissioner of the Social Security Administration reviews a

disability claim for Supplemental Security Income by evaluating

the following:

> (1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

> (2)   Is the claimant's alleged impairment sufficiently severe to limit his ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

> (3)   Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

> (4)   Does the claimant possess the residual functional capacity to perform his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

> (5)   Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th

Cir. 2006) (citing 20 C.F.R. §§ 404.1520; 416.920).

The claimant has the burden of proof at steps one through

four, and the Commissioner has the burden of proof at step five.

Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001).

**IV.  The Administrative Law Judge Reviewed Plaintiff's Application By Using The Five-Step Sequential Evaluation**

At Plaintiff's March 2, 2017 administrative hearing, the Administrative Law Judge ("ALJ") for the Social Security Administration reviewed Plaintiff's claim by engaging in the five-step sequential evaluation.

The Parties agree there were no errors in the first three steps of the administrative review process.

**At step one**, the ALJ found that Plaintiff met the insured status requirements for Supplemental Security Income through June 30, 2020.  (AR at p. 20, ECF No. 15).

**At step two**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 25, 2015, the date after Plaintiff's grand mal seizure, the alleged onset date of Plaintiff's disability.  (Id.)

**At step three**, the ALJ found that Plaintiff has the following severe impairments: hip fracture, osteoporosis, lumbar spine degenerative disc disease, status post right femur fracture, and seizures.  (Id.)

The Parties disagree as to the ALJ's evaluations at steps four and five in the administrative review process.

**At step four**, the ALJ reviewed the record and made a finding as to Plaintiff's residual functional capacity.  The ALJ found that Plaintiff could not perform his past work but he could

perform work as follows:

> [H]e can lift and/or carry 20 pounds occasionally and
> 10 pounds frequently; he can stand and/or walk 3 hours
> in an 8-hour period, and he needs a medically-required
> hand-held assistive device such as a cane for extended
> ambulation; he can sit up to 6 hours total in an 8-hour
> period but only 2 hours at a time, after which he needs
> to reposition such as standing for 5 to 10 minutes; he
> cannot push and/or pull (*e.g.*, operate foot controls or
> foot pedals) with the right lower extremity; he can
> frequently push and/or pull with the left lower
> extremity; he can occasionally climb ramps and stairs
> but never climb ladders, ropes, or scaffolds; he can
> occasionally balance and stoop; he cannot kneel,
> crouch, or crawl; he must avoid all exposure to extreme
> cold and extreme heat; he must avoid all exposure to
> hazardous machinery and unprotected heights, and; he
> cannot drive as an occupational requirement.

(AR at pp. 22-24, ECF No. 15).

**At step five**, the ALJ inquired with the vocational expert to evaluate if there were other jobs that Plaintiff could perform. The ALJ found that someone with Plaintiff's limitations could perform work as Cashier II, Storage Facility Rental Clerk, and Furniture Rental Consultant. (Id. at p. 26). The ALJ ruled that Plaintiff has not been under a disability, as defined by the Social Security Act, for a period of twelve months from March 25, 2015 through April 18, 2017. (Id.)

## V. Remand Is Appropriate To Enable The ALJ To Properly Consider The Treating and Examining Physicians' Opinions Regarding Plaintiff's Limitations

Plaintiff argues that the ALJ did not properly consider the opinions of Plaintiff's treating and examining physicians but

instead credited one non-examining physician.

Remand is required for the ALJ to properly evaluate the opinions of primary physician Dr. Biedel, Neurosurgeon Dr. Rogers, Neurologist Dr. Powell, Endocrinologist Dr. Singer, and the Hawaii State examining physician Dr. Kau.

> **A.   The ALJ Did Not Provide Clear And Convincing Reasons For Rejecting The Opinions Of Plaintiff's Primary Treating Physician, Dr. Biedel, Or For Rejecting Plaintiff's Own Symptom Testimony**

A treating physician's opinion is entitled to the greatest weight because the treating physician is hired to examine and treat the patient over an extended period of time and has the best opportunity to assess the claimant.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  Treating physicians are "most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)."  20 C.F.R. §§ 404.1527(c), 416.927(c).

An ALJ must state clear and convincing reasons that are supported by substantial evidence in order to reject the opinion of the treating physician.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

> **1.   The ALJ Did Not Provide Clear And Convincing Reasons For Rejecting The Medical Opinions Of Dr. Anne Biedel**

Plaintiff's primary care treating physician, Dr. Anne

Biedel, M.D., examined Plaintiff on more than 25 different occasions for the two years following his grand mal seizure in March 2015. (AR at pp. 217-379, ECF No. 17). Plaintiff was diagnosed with a seizure disorder, osteoporosis, and lumbar degenerative disc disorder with fractures.

Plaintiff suffered four separate injuries following his initial grand mal seizure on March 24, 2015.

First, Plaintiff's March 24, 2015 grand mal seizure caused him to break his right femur. (Id. at p. 310). Plaintiff underwent surgery to have a metal rod placed in his leg and he suffered "shortening and abduction of [his] right lower extremity" as a result. (Id. at p. 313).

Second, on July 5, 2015, Plaintiff fell at the beach and injured his knee and fractured his toes. (Id. at p. 366).

Third, on January 24, 2016, Plaintiff fell in the bathtub, and hit his head on the shower and edge of the tub, causing head and face lacerations. (Id. at p. 480). Plaintiff also suffered vertebral fractures that include a burst fracture and a compression fracture in his spine. (Id. at pp. 384-85).

Fourth, Plaintiff suffered a second grand mal seizure on May 17, 2016. (Id. at p. 641). Plaintiff went to the emergency room and had another seizure while he waited in the ER. (Id. at p. 647).

Dr. Biedel examined Plaintiff throughout the progression of

his infirmities.  She referred Plaintiff to numerous specialists and prescribed Plaintiff medications and physical therapy for his ailments.  Plaintiff consistently attended physical therapy and tried various medications but still had pain in his hips, leg, and back.

The records from Dr. Biedel indicate Plaintiff suffered numerous side-effects from medications for pain and seizures including vomitting and nausea.  Plaintiff's frequent complaints of pain and limitations in his ambulation are noted throughout Dr. Biedel's extensive treatment history of Plaintiff.

Despite the extensive treatment record, the ALJ did not discuss the lengthy treatment record in the written decision. The ALJ cited certain medical records but did not address the numerous medical opinions of Dr. Biedel except for the letter she wrote on November 14, 2016.  The November 14, 2016 letter from Dr. Biedel stated that she believed Plaintiff was "disabled." (AR at p. 24, ECF No. 15).  The ALJ found as follows:

> An opinion on disability is reserved to the
> Commissioner ... and Dr. Biedel does not provide a
> function-by-function analysis.  Given that the claimant
> had not taken seizure medication regularly, and there
> are only minimal neurological findings, I find that it
> is not necessary to recontact Dr. Biedel for a
> function-by-function analysis, because the medical
> evidence does not support a finding of disability, nor
> does it support addition [sic] functional limitations
> beyond those adopted above.
> (Id.)

The ALJ is correct that the ultimate opinion on disability

is reserved for the agency; however, the ALJ is required to develop the record and evaluate the medical opinions provided. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). The ALJ may not substitute his own judgment for the judgment of Plaintiff's treating physicians. The ALJ must provide clear and convincing reasons for rejecting the treating physician's opinion and it must be supported by substantial evidence. The ALJ's blanket disagreement with Dr. Biedel's assessment of Plaintiff's physical limitations, without more, is insufficient.

The ALJ is required to consider factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship and the supportability of the treating physician's opinion in evaluating its weight. Trevizo v. Berryhill, 871 F.3d 664, 676 (9th Cir. 2017). Failure by the ALJ to evaluate these factors with respect to the treating physician's opinion constitutes reversible legal error. Id. The ALJ did not consider these factors and remand is required.

>          **2.   The ALJ Erred By Improperly Rejecting The Treating Physicians' Opinions In Favor Of A Non-Treating Physician**

Contrary to the ALJ's opinion, there are significant objective medical tests in the record, including x-rays, MRIs and neurological findings by Plaintiff's treating physicians. There

are detailed medical records from Dr. Biedel and the records from Dr. Ching, Dr. Rogers, and Dr. Powell.

Dr. Biedel found that the medical data and physical examinations indicated that Plaintiff was unable to stand for long periods of time, is required to sit down often, and could not work due to pain in his low back and hips. (AR at p. 447, ECF No. 15). The ALJ did not address the specific findings in Dr. Biedel's treating records, but rather, he rejected her opinion in its entirety in favor of the opinion of non-examining physician, Dr. Harold Milstein, who never examined or treated the Plaintiff.

In some instances, a non-examining physician may review the claimant's medical records to assist the ALJ in his or her assessment of the claimant's residual functional capacity. An ALJ may not rely on the opinion of a non-examining physician alone to reject the opinion of the treating physician as to the severity of the claimant's impairments. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).

Dr. Milstein's opinion was not based on his own clinical findings but on a review of only part of Dr. Kenneth Kau's assessment of Plaintiff. Dr. Milstein's review was limited to Exhibit 19F which included Dr. Kau's first two examinations of Plaintiff, not the third examination. (AR at p. 55). Dr. Milstein never reviewed Plaintiff's treatment records from other

26

physicians.  The ALJ was required to provide specific and legitimate reasons for discounting the treating physicians' opinions in favor of Dr. Milstein's opinion.  <u>Morgan v. Comm'r</u>, 169 F.3d 595, 600 (9th Cir. 1999).  The ALJ failed to do so.

In addition, the ALJ relied on Dr. Milstein's opinion to determine Plaintiff's limitations.  The ALJ did not incorporate Plaintiff's pain into the limitations.  Dr. Milstein did not consider the level of pain Plaintiff would experience when testifying as to Plaintiff's ability to perform work.  (<u>Id.</u> at p. 60).  Dr. Milstein stated that his assessment was based on functional limitations that would not cause Plaintiff further injury, but he expected Plaintiff would experience pain in performing those functions.  (<u>Id.</u>)  The record is unclear as to whether the ALJ properly considered the testimony regarding Plaintiff's level of pain when determining the residual functional capacity.

### 3.    The ALJ Erred In Making His Own Interpretations Of The Raw Medical Data

Courts in the Ninth Circuit Court of Appeals jurisdiction have repeatedly found that an ALJ may not reject the opinion of a treating physician based on his or her own interpretation of raw medical data.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1102-03 (9th Cir. 1999); <u>see</u> <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007); <u>Banks v. Barnhart</u>, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006).

Here, there were medical opinions based on objective data set forth by Plaintiff's treating and examining physicians. The ALJ erred when he rejected their opinions in favor of his own interpretation of the medical evidence. <u>Tackett</u>, 180 F.3d at 1102-03.

    **4.**    **The ALJ Erred In Discrediting The Plaintiff's Own Symptom Testimony Without Providing Clear And Convincing Reasons**

The ALJ rejected Plaintiff's testimony regarding his symptoms including his level of pain without providing specific, clear and convincing reasons for doing so. <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 493 (9th Cir. 2015). The record reflects that the ALJ made factual errors regarding Plaintiff's symptom testimony.

For example, the ALJ found that Plaintiff testified that he could perform daily activities. The ALJ reviewed Plaintiff's initial application and found that Plaintiff initially "stated that he could make simple meals and shop in stores (which is not consistent with his testimony...." (AR at p. 22). A review of the record, however, demonstrates that Plaintiff's statement on his initial application is entirely consistent with his testimony. In his initial application, Plaintiff states that he goes to stores but requires friends to drive him. (<u>Id.</u> at pp. 236, 262). At the hearing, Plaintiff testified, as follows:

```
ALJ: Do you go shopping from time to time?

Pla: Yes, although I go with friends who assist.

ALJ: Okay.  Can you go to the grocery store, get a
     cart, walk up and down the aisles, pick out
     the items you need, put them in a basket?

Pla: No.

ALJ: Why not?

Pla: It's very hard to reach.  It's – I can't bend
     down.  I have to crouch down.  It's quite
     difficult.

ALJ: When's the last time you were in a store?

Pla: A week and a half ago.

ALJ: All right.  Do you use a cane, a walker or a
     wheelchair to get around?

Pla: Yes.

ALJ: Did you – what do you use?  What do you use?

Pla: Oh, I have a cane.

(AR at pp. 52-53).
```

There was no inconsistency between Plaintiff's testimony about his shopping activities and the statement on his initial applications that he goes to the grocery store with assistance. The ALJ erred in discrediting Plaintiff's testimony on this basis.  Brown-Hunter, 806 F.3d at 493.

### 5.    The ALJ Erred In Discrediting Plaintiff Based On His Purported Failure To Take Medication

The ALJ claimed that Plaintiff did not regularly take

29

medication.  The record demonstrates that Plaintiff took various types of pain, osteoporosis, and seizure medication but had difficulty with side-effects.  Numerous physicians found that Plaintiff suffered gastrointestinal issues from medications as mild as Advil and Tylenol.

The ALJ is not allowed to make his own assessment as to the efficacy of the Plaintiff's medications in order to reject the medical findings of the treating physicians.  Smith v. Colvin, 2016 WL 4059627, *3-*4 (C.D. Cal. July 27, 2016); Ceja v. Colvin, 2013 WL 5492046, *9 (C.D. Cal. Sept. 30, 2013).

**6.    The Administration Erred In Failing To Consider Dr. Biedel's Supplemental Medical Opinion Provided To The Appeals Council**

Dr. Biedel provided further medical analysis to the Appeals Council that directly contradicted the ALJ's findings.

The Government argues that the Court should disregard this part of the record.  The Government misunderstands the caselaw. The Ninth Circuit Court of Appeals in Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012), explained that relevant evidence that was not submitted to the ALJ but was submitted for the first time on appeal to the Appeals Council must be considered by the District Court.

The evidence submitted to the Appeals Council includes a letter from Dr. Biedel on May 26, 2017.  (Supplemental AR at p.

652, ECF No. 20).  The letter is particularly relevant because it set forth Dr. Biedel's extensive treatment of the Plaintiff and provides details into Plaintiff's limitations that directly contradict the ALJ's residual functional capacity assessment. (Supplemental AR at p. 652, ECF No. 20).

The letter states that Plaintiff continued to suffer for two years after his grand mal seizure and explains that his infirmities make it so that:

> [Plaintiff] has continued to have difficulties walking, standing and sitting for very long due to pain in his right hip and knee which he injured after another fall. Because of his lumbar fractures and degeneration of discs he also has a radiculopathy that causes his left leg to feel numb and painful.  He must use a cane to stabilize his gait....Mr. Nicholson is in constant pain.  He is unsteady on his feet and cannot tolerate staying in certain positions for very long.  He is in constant danger of falling and breaking bones.  I believe he is unable to be gainfully employed in any capacity.

(Id.)

The agency was required to address the findings of Plaintiff's treating physician and it failed to do so.

On remand, the ALJ is required to properly evaluate the opinion of Dr. Biedel and Plaintiff's testimony as to his symptoms and limitations.

**B.   The ALJ Did Not Provide Clear And Convincing Reasons For Rejecting The Opinion Of Examining Physician Dr. Kenneth Kau, M.D.**

Dr. Kenneth Kau, M.D., from the State of Hawaii Department

of Human Services, conducted three separate physical examinations of Plaintiff in order to determine whether Plaintiff was eligible for State benefits due to his disability.

In July 2016, October 2016, and January 2017, Dr. Kau found Plaintiff was incapacitated and unable to work.

The ALJ rejected Dr. Kau's opinion without clear and convincing evidence.

### 1. The ALJ Made Factual Errors In Reviewing Dr. Kau's Medical Evaluations Of Plaintiff

The ALJ did not name Dr. Kau in the written decision. Instead, the ALJ referred to multiple physicians from the State of Hawaii Department of Human Services having examined Plaintiff. The ALJ stated as follows:

> State of Hawaii Department of Human Services ("DHS") doctors concluded in July, October and November 2016 as well as January 2017 that the claimant was incapacitated and could only perform extremely less-than-sedentary exertional-level work through May 2017....The DHS doctors only briefly examined the claimant, but more importantly, their statements do not indicate that the 12-month duration requirement is satisfied (SSR 82-52). Thus, I do not give great weight to the DHS doctors' findings.
>
> (AR at p. 24, ECF No. 15).

The ALJ made a factual error in reviewing Plaintiff's medical records. Only Dr. Kau from the State of Hawaii Department of Human Services examined Plaintiff. There were not brief examinations by three separate doctors as stated by the

ALJ.

### 2. The ALJ Did Not Properly Review Dr. Kau's Findings As To The Expected Duration Of Plaintiff's Incapacitation

Dr. Kau found that Plaintiff had been unable to work from at least March 2016 when Plaintiff underwent imaging that revealed he had suffered multiple spinal fractures. (Id. at pp. 384, 560-61, 637). Dr. Kau found that Plaintiff remained incapacitated and was unable to work until at least May 2017, more than a year later. (Id.)

Dr. Kau evaluated Plaintiff pursuant to Hawaii Administrative Rule § 17-658-5(a) and found Plaintiff suffered from an impairment "which has lasted or may be expected to last for a continuous period of not less than twelve months."

The ALJ erred in finding that Dr. Kau did not find that Plaintiff's incapacitation lasted or was expected to last more than twelve months. Dr. Kau applied Hawaii Administrative Rule § 17-658-5(a) and found that Plaintiff had met the 12-month duration requirement. Dr. Kau found that Plaintiff had been unable to work from at least March 2016 (when Plaintiff suffered multiple spinal fractures) through at least May 2017. (Id. at pp. 560-61, 637).

Dr. Kau conducted physical examinations of Plaintiff on three occasions: July 27, 2016, October 26, 2016, and January 25, 2017. The first physical examination took place more than 16

months after Plaintiff's alleged onset date of disability of
March 25, 2015, the day after Plaintiff suffered a grand mal
seizure causing him to break his right femur. Plaintiff's right
leg was shortened as a result of the surgery. Plaintiff began to
experience hip and back pain after suffering numerous falls.
Plaintiff was later diagnosed with severe osteoporosis and
multiple lumbar fractures in his vertebrae.

In March 2016, Plaintiff suffered from a burst fracture and
a compression fracture in his spine. (Id. at pp. 384-85). There
were also osteoporotic fractures in his spine. Plaintiff was
prescribed a back brace and was told by his physician that he
could not work. (Id. at p. 386).

Dr. Kau found that Plaintiff remained incapacitated from
March 2016 until at least May 2017. At each of Dr. Kau's
evaluations in 2016 and 2017, Dr. Kau found that Plaintiff was
unable to work. Dr. Kau required Plaintiff to return for further
physical examinations and Plaintiff complied. Dr. Kau found that
Plaintiff was improving with physical therapy but remained
incapacitated.

The ALJ did not properly review Dr. Kau's findings.
Instead, the ALJ found that the duration requirement that
Plaintiff be disabled for a minimum of twelve months was not
satisfied by Dr. Kau's findings. The ALJ's finding is belied by
the record. The ALJ acknowledged that Plaintiff was initially

34

incapacitated following his seizure in March 2015. (AR at p. 23, ECF No. 15). The ALJ did not provide an assessment of when he believed that Plaintiff was able to return to work.

Plaintiff suffered new injuries in July 2015 and January 2016. The treating and examining physicians, including Dr. Kau, all found that Plaintiff remained incapacitated until at least May 2017.

Dr. Kau first examined Plaintiff on July 27, 2016, more than a year after his femur surgery, and found that Plaintiff remained disabled. Dr. Kau found that Plaintiff continued to be disabled after his first examination. The record shows that Dr. Kau found Plaintiff was disabled until at least May 2017, more than two years after Plaintiff suffered his grand mal seizure and more than a year after his subsequent spinal fractures. (Id. at p. 637).

Importantly, Dr. Kau was required under Hawaii State law to find Plaintiff's disability lasted or would last a minimum of 12 months in order for him to find Plaintiff unable to work. Haw. Admin. Rules § 17-658-5(a). The ALJ did not address the Hawaii State regulation.

The Government argues that Dr. Kau did not find Plaintiff was "permanently disabled" and did not refer him directly for SSI benefits by checking a box on the form filled out by Dr. Kau. The ALJ made no findings as to Dr. Kau's completion of the forms.

The ALJ made factual errors and stated that Plaintiff was evaluated by different physicians and never even named Dr. Kau in his decision.  The Court cannot assess the ALJ's reasoning with respect to Dr. Kau's completion of the forms when the record does not provide any findings by the ALJ on the issue.

The record is clear that Dr. Kau's examinations and findings as to Plaintiff's limitations directly contradict the ALJ's residual functional capacity assessment.  The ALJ did not provide clear and convincing evidence for rejecting the examining physician's opinion.  <u>Bayliss</u>, 427 F.3d at 1216.  Remand is required for the ALJ to properly evaluate Dr. Kau's opinion.

## C.    The ALJ Did Not Assess Dr. Rogers, Dr. Singer, and Dr. Powell's Opinions

The ALJ is required to develop the record and evaluate the medical opinions provided.  <u>Howard</u>, 341 F.3d at 1012.  The ALJ did not assess the medical opinions of Plaintiff's neurosurgeon, neurologist, or endocrinologist in the record.

### 1.    Neurosurgeon Dr. Thomas Rogers, M.D.

On March 17, 2016, Plaintiff was examined by neurosurgeon Dr. Thomas Rogers, M.D.  (AR at pp. 384-86, ECF No. 15).  Dr. Rogers found Plaintiff had fractures in his vertebrae causing back pain and that his "pain in the back is worse with sitting or standing."  (<u>Id.</u> at p. 384).  Dr. Rogers found that "when the

36

pain is severe, it can go up to 8/10 in severity.  It gives him some depression, fatigue, and trouble sleeping." (<u>Id.</u>)  Dr. Rogers additionally stated that Plaintiff "is very sensitive to pain medication, Tylenol, Motrin." (<u>Id.</u>)  Dr. Rogers prescribed a back brace for Plaintiff. (<u>Id.</u>)  Dr. Rogers stated that "it is unusual for a man his age to have osteoporosis." (<u>Id.</u> at p. 385).  Dr. Rogers estimated it would be a minimum of 2 to 6 months before Plaintiff could return to work. (<u>Id.</u> at p. 386).

At a follow-up appointment on May 12, 2016, Dr. Rogers concluded that Plaintiff continued to have pain. (<u>Id.</u> at p. 383).  Dr. Rogers found that Plaintiff could be taken out of the back brace, but he stated that more than a year after Plaintiff's March 25, 2015 alleged onset date of disability due to his grand mal seizure, "[Plaintiff] cannot return to work as a waiter at this time certainly.  He still has residual back pain." (<u>Id.</u>)

The ALJ never addressed Dr. Rogers' findings.

## 2. Endocrinologist Dr. Frank Singer, M.D.

On April 14, 2016, Plaintiff was examined by endocrinologist Dr. Frank Singer, M.D. (<u>Id.</u> at pp. 398-402).  Dr. Singer found that Plaintiff suffered from "osteoporosis on bone density of the left femoral neck with osteopenia of the total hip and spine." (<u>Id.</u> at p. 399).

Dr. Singer found that some osteoporosis medications proved

ineffective with Plaintiff and others upset Plaintiff's gastrointestinal system but he prescribed Plaintiff Fosamax to try for one year.  (Id. at pp. 399-400).

The ALJ did not address Dr. Singer's findings.

### 3.    Neurologist Dr. George E. Powell, M.D.

On June 13, 2016, Plaintiff was evaluated by neurologist Dr. George E. Powell, M.D.  Dr. Powell found that Plaintiff had been diagnosed with acute osteoporosis and had difficulty tolerating medications.  (Id. at p. 454).  Dr. Powell conducted an electroencephalography (EEG) to monitor electrical activity in the brain and diagnosed Plaintiff with generalized epilepsy and seizure disorder.  (Id. at pp. 451, 615).

In follow-up appointments in 2017, Dr. Powell prescribed medications for Plaintiff.  (Id. at pp. 600, 615).  One medication caused dizziness in the Plaintiff and Dr. Powell switched Plaintiff to an extended release medication for Plaintiff to take only at night.  (Id. at p. 600).  Dr. Powell noted that acetaminophen, vicoprofen, and Advil caused nausea and vomiting in the Plaintiff.  (Id. at p. 601).

The ALJ also did not address Dr. Powell's opinion.  As a whole, the ALJ did not provide a specific assessment of either Dr. Rogers, Dr. Singer, or Dr. Powell's medical opinions in the record.  The Ninth Circuit Court of Appeals held in Marsh v.

<u>Colvin</u>, 792 F.3d 1170, 1172-73 (9th Cir. 2015), that an ALJ is required to specifically address an examining doctor's opinion. <u>See</u> 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) ("we will evaluate every medical opinion we receive"); <u>Montalbo v. Colvin</u>, 231 F.Supp.3d 846, 856-57 (D. Haw. 2017) (finding that ALJ committed legal error by failing to address the opinions of the treating and examining doctors).

Remand is required to allow the ALJ to properly evaluate the medical opinions of Dr. Biedel, Dr. Kau, Dr. Rogers, Dr. Singer, and Dr. Powell. 20 C.F.R. §§ 404.1527(c)(1)-(6) 416.927(c)(1)-(6); <u>Trevizo</u>, 871 F.3d at 675.

## CONCLUSION

The Commissioner of Social Security Administration's decision is **REVERSED AND REMANDED** for further proceedings consistent with this Order.

IT IS SO ORDERED.

DATED: November 28, 2018, Honolulu, Hawaii.

Helen Gillmor
United States District Judge

<u>Brian J. Nicholson v. Nancy A. Berryhill, Acting Commissioner of Social Security</u>; Civ. No. 17-00508 HG-KJM; **ORDER REVERSING THE DECISION OF THE SOCIAL SECURITY ADMINISTRATION COMMISSIONER AND REMANDING THE CASE FOR FURTHER PROCEEDINGS**